18-1061-cv
*Gregory v. ProNAi Therapeutics*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of December, two thousand eighteen.**

PRESENT:
ROBERT A. KATZMANN,
*Chief Judge*,
GUIDO CALABRESI,
RAYMOND J. LOHIER, JR.,
*Circuit Judges*.

---

MICHAEL GREGORY, individually and on behalf of all others similarly situated, YESHAN JAGROO, MINDY FROST,

*Plaintiffs-Appellants*,

PRONAI INVESTOR GROUP, SHANNON LEE HOPKINS,

*Plaintiffs*,

v.                                                              No. 18-1061-cv

PRONAI THERAPEUTICS INC., NICK GLOVER, SUKHI JAGPAL,

*Defendants-Appellees*.

---

1

For Plaintiffs-Appellants: SHANNON L. HOPKINS (James Grohsgal, Stephanie A. Bartone, *on the brief*), Levi & Korsinsky, LLP, Stamford, CT.

For Defendants-Appellees: PETER A. STOKES (Robin D. Adelstein, *on the brief*), Norton Rose Fulbright US LLP, Austin, TX and New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Michael Gregory, Yeshan Jagroo, and Mindy Frost, individually and on behalf of all others similarly situated (collectively, "plaintiffs"), bring this securities class action lawsuit against ProNAi Therapeutics Inc. ("ProNAi" or the "company"), its CEO and President Nick Glover, and its CFO Sukhi Jagpal (collectively, "defendants"). On March 13, 2018, the district court granted defendants' motion to dismiss with prejudice, and on March 14, the district court entered judgment in favor of defendants. For the reasons that follow, we affirm. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

A complaint alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 must "state with particularly facts giving rise to a strong inference that the defendant[s] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The requisite state of mind is "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).[1] Scienter may be established "either (a) by alleging

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

2

facts [showing] that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Recklessness is sufficient to establish scienter only if the defendants' actions represent "an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000). An inference of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

*First,* plaintiffs argue that the district court erroneously concluded that ProNAi had not materially misled its investors by failing to disclose amendments to its clinical trial protocols. The district court held that defendants' disclosure of those amendments on a government website made them public for purposes of the federal securities laws, precluding plaintiffs' nondisclosure claim. But even assuming that the district court erred and that the protocol amendments were not public information for purposes of the securities laws, plaintiffs still fail to adequately allege scienter. Defendants warned investors that these "protocols may need to be revised based on unexpected early results," App. 815, and then posted revisions on a public government website that tracked protocols for clinical trials. Moreover, the amendments did not render defendants' prior statements so obviously false or misleading that a failure to disclose the amendments could be considered "highly unreasonable." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996). For example, defendants initially said the company was testing PNT2258 as a "third-line" therapy, and the amended protocols still included patients who had received two or more prior unsuccessful treatments. Accordingly, there can hardly be a "cogent" and "compelling" inference that defendants fraudulently misled investors. *Tellabs*, 551 U.S. at 314.

3

*Second*, plaintiffs argue that defendants violated their alleged duty to update investors when two of the final three patients in the Pilot Phase II study (the "pilot") stopped treatment by the end of 2015. We disagree. The company announced results of the pilot in December 2014. In July, the company released updated results, disclosing the number and severity of adverse events and the fact that ten of the thirteen patients had discontinued treatment. In January 2016, with the full Phase II trials well underway, the company again updated investors on the pilot. The update showed that the patient who had "stable disease" and remained under treatment as of July 2015 still had "stable disease" and still remained under treatment while the other two patients who had remained under treatment as of July 2015 were no longer receiving treatment. On the facts alleged, defendants' failure to disclose the status of these patients prior to January 2016 was not misleading, much less fraudulent.[2]

*Third*, plaintiffs argue that the company fraudulently failed to disclose that "eight of ten patients [from the pilot] who had discontinued treatment by November 2015" experienced "faster disease progression on PNT2258." Appellant's Br. at 35. But defendants had no duty to disclose information about disease progression because it never made any affirmative representations that a patient's duration of response on PNT2258 should be or was greater than his or her duration of response on other therapies. The company at most stated that it sought to enroll patients with

---

[2] Plaintiffs also argue that Glover's November 2015 presentation falsely represented that three patients were still on treatment. But plaintiffs do not identify this purportedly false representation, and there is no indication that Glover explicitly stated that three pilot patients were still receiving treatment in November. Although Glover's presentation included the same topline results chart that the company published in its prospectus, the data in that chart—reflecting the number of days each pilot patient received treatment—had not been updated, belying any notion that the chart represented the current status of the pilot patients.

4

prior therapy regimens, a statement that expresses no view as to how patients should fare relative to those prior regimens.

*Fourth*, plaintiffs argue that they sufficiently alleged that defendants knowingly, or at a minimum recklessly, misrepresented the likelihood that DNAi and PNT2258 would succeed, given the results of the company's internal studies, which failed to validate DNAi's mechanism of action.[3] But the complaint includes no allegations suggesting that anyone at the company thought that the failure to confirm PNT2258's mechanism of action by the end of 2015 was dispositive of the drug's efficacy.[4] Even plaintiffs' confidential witness continued working to validate the drug's mechanism of action until July 2016. Plaintiffs also overstate the severity of the negative, undisclosed information available to Glover when he publicly expressed optimism about DNAi and PNT2258. According to plaintiffs, Glover knew (1) that the Phase I trial showed no efficacy; (2) that "8 out of 10 patients who had discontinued treatment [in the Pilot Phase II trial] experienced disease progression at a faster rate on PNT2258" than on their prior

---

[3] Plaintiffs' argument that we can infer scienter from defendants' motives to affirmatively misrepresent the potential of the drug is plainly inadequate. Defendants' general incentive to maximize the proceeds of the company's IPO does not give rise to a strong inference of fraudulent intent. Moreover, defendants' actionable misstatements were made after the IPO. Plaintiffs' general allegations about AS-141 are similarly insufficient. Plaintiffs' complaint includes no allegations suggesting that defendants intentionally delayed their June 6, 2016 announcement until after the AS-141 acquisition, and plaintiffs' theory that the company "would have been unable to acquire exclusive rights (or any rights) to AS-141" if the defendants had "disclosed the truth" about PNT2258, Appellant's Br. at 56, is wholly speculative.

[4] Plaintiffs also point to a series of executive resignations in support of their scienter theory. But the complaint includes no allegations that the executives resigned because the company was behaving fraudulently. And the opinion, expressed in late 2015 or early 2016 to a confidential witness, of one of the company's executives, who resigned in April 2016, that DNAi technology did not work is not enough to infer that the other executives, who continued to study the question, knew or should have known that it did not work. Among other things, the executive in question continued to work for several months after allegedly expressing his opinion that the technology did not work and only resigned shortly before the company announced it was discontinuing its trials of PNT2258.

treatment, Appellant's Br. at 45; and (3) that at least ten patients with ECOG scores of 2 or more had discontinued treatment in the Wolverine trial by November 12, 2015, *id.* at 49. But the Phase I trial was designed to study safety (not efficacy), and the results from that trial were disclosed prior to the IPO. Similarly, investors knew prior to the company's IPO that ten pilot patients had dropped out of the study. Moreover, it is uncontested that most of the patients in the pilot achieved a complete or partial remission or stable disease. App. at 888. And, while plaintiffs are correct that many patients in the full Phase II trials were not responding to PNT2258, many patients were still receiving treatment and it is uncontested that one of the Phase II trials ultimately "showed modest single-agent activity" in some DLBCL patients. *Id.* at 685. On the facts alleged, then, the complaint does not plead that the defendants acted with a knowing falseness or recklessly.[5]

*Last*, plaintiffs argue that the district court erred in denying them leave to amend. Although plaintiffs sought leave to amend in a footnote at the end of their opposition to defendants' motion to dismiss, they included no proposed amendments.[6] And although plaintiffs proposed several amendments on appeal, they do not explain how these amendments would cure the shortcomings that resulted in dismissal or why they did not include these proposed amendments previously. *See Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (finding no abuse of discretion because, among other reasons, the plaintiff "did not advise the district court how the complaint's defects would be cured"). Indeed, plaintiffs' proposed

---

[5] As the district court correctly dismissed plaintiffs' 10(b) claims, plaintiffs' 20(a) control person claims also fail. *See*, *e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

[6] Nor did plaintiffs file a motion to amend or otherwise provide the district court with a list of proposed modifications to the complaint that would cure the defects that resulted in dismissal.

amendments as they relate to scienter are plainly insufficient to create a strong inference of fraud. We therefore conclude that the district court did not abuse its discretion by dismissing plaintiffs' complaint with prejudice.

We have considered all of plaintiffs' other contentions on appeal and have found in them no basis for reversal. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk